LEONE KRAFT, administratrix of estate of OREN R. KRAFT, substituted appellant, v. EDWIN BAHR, sometimes known as Edw. Bahr, Ed Bahr, and as Edward Bahr, appellee.

No. 51286.

(Reported in 128 N.W.2d 261)

824

MAY 5, 1964.

REHEARING DENIED JULY 16, 1964.

Don Boddicker, of Vinton, and John D. Randall, Sr., of Cedar Rapids, for appellant.

Shuttleworth & Ingersoll, of Cedar Rapids, for appellee.

Fisher & Pickens, of Cedar Rapids, for United Fire and Casualty Company, intervenor.

Shuttleworth & Ingersoll, of Cedar Rapids, for Indemnity Insurance Company of North America, defendant on cross-petition.

LARSON, J.—The issue presented is whether timely jurisdiction was acquired over a nonresident defendant in an action to recover for personal injuries as a result of a motor-vehicle accident. The trial court held "that plaintiff's claim based upon personal injury is, as a matter of law, barred by the operation of section 614.1(3), Code of Iowa." (Statute of Limitations) Substituted plaintiff, Leone Kraft, administratrix of the estate of Oren R. Kraft, deceased, by leave of court, appealed. We reverse.

The essential facts are these. Plaintiff's cause of action accrued November 9, 1954. On November 7, 1956, he filed in the Benton County District Court a petition against *Edwin* Bahr claiming personal injury and property damages. On November 8, 1956, an original notice of the action was filed with the Commissioner of Public Safety of the State of Iowa which named defendant as *Edwin* Bahr. Notification of said filing was sent to *Edwin* Bahr at the address he gave the investigating officer at the time of the accident, by restricted registered mail on November 9, 1956. After mailing it was discovered that defendant's actual name was Edward Bahr, and on November 9, 1956, plaintiff's attorney attempted to correct the misnomer by amending the petition and by filing an additional original notice directed to Edwin Bahr, otherwise known as Edw. Bahr, Ed Bahr and Edward Bahr. Notification to defendant of the second filing, however, was not mailed until November 17, 1956, obviously over two years after the accident. Defendant received the first notification and signed the receipt card "Edward Bahr" on November 29, 1956. The second was received and receipted for on December 1, 1956. No issue is made as to the form of the notice or of its manner of mailing. Thus we have here a "notification" addressed to Edwin Bahr at 205 Hebard Street, Knoxville, Illinois, and received by the proper party, Edward Bahr, at Houston, Texas, which plaintiff contends constituted due and timely process under the Iowa statutes

pertaining to actions against nonresidents. Sections 321.498 to 321.505 inclusive, Code of Iowa, 1958 and 1962.

Section 321.500 provides that the original notice of suit filed with the commissioner shall be in form and substance the same as provided in suits against residents, except sixty days for appearance is provided after the date of filing with the commissioner. See rule 50, Rules of Civil Procedure.

Section 321.501 provides the manner of service, (1) by filing a copy of the original notice with the commissioner, together with a two-dollar fee; (2) "By mailing to the defendant * * * within ten days after said filing with the commissioner, by restricted certified mail *addressed to the defendant at his last known residence or place of abode,* a notification of the said filing * * *." (Emphasis supplied.)

Section 321.502 provides the form of the notification to nonresidents in substantially the following form: "To (Here insert the name of each defendant and his residence or last known place of abode as definitely as known.) You will take notice that an original notice of suit against you, a copy of which is hereto attached, was duly served upon you at Des Moines, Iowa, by filing a copy of said notice on the ........ day of ............................, 19........, with the commissioner * * *."

Section 321.504 provides, in lieu of the mailing of notification to defendant in a foreign state, that plaintiff *may have the notice served personally.* Although section 321.511 refers to service under this authorization as substituted service, under our holding it is, in fact, more closely akin to personal service. See Emery Transportation Co. v. Baker, 254 Iowa 744, 751, 119 N.W.2d 272.

Section 321.505 provides for proof of service, which was filed herein on November 19, 1956, and duly amended to show both postal receipts January 21, 1957.

▉▉ I. At the outset we must determine whether the notification required by section 321.502 was satisfied when addressed to Edwin Bahr rather than Edward Bahr, defendant's correct name. It is true we have said this method of obtaining jurisdiction over nonresidents is an extraordinary method of procedure, and to take advantage of it, one must strictly follow

the procedure outlined in the statute. Esterdahl v. Wilson, 252 Iowa 1199, 1204, 110 N.W.2d 241; Johnson v. Brooks, 254 Iowa 278, 282, 117 N.W.2d 457. However, by that announcement we did not mean to infer that misnomers or minor irregularities in notifications, which would not in like circumstances void personal service of an original notice, would be sufficient to defeat process in this manner. We hold to the contrary. Ransom v. Sipple Truck Lines, 240 Iowa 466, 470, 34 N.W.2d 590. In this connection, obviously a stricter rule as to correct designations is called for in published notices, or in substituted service than in personal service where the true defendant may not be aware that the notice is directed to him. But substituted service under our nonresident statutes is not provided. The notification must be delivered to the addressee himself. Esterdahl v. Wilson, supra. While we think an argument may be made that greater variations should be permitted in the Christian names or initials in nonresident notifications than those in petitions and original notices generally, we will consider them alike for the purposes of this discussion. No cases were cited us, nor have we been able to find any that specially deal with variations in defendant's name in such notifications. Some cases where notices of actions were not personally served, involving fatal variations in notices, are: Thornily v. Prentice, 121 Iowa 89, 93, 96 N.W. 728, 100 Am. St. Rep. 317; Schaller & Son v. Marker, 136 Iowa 575, 576, 114 N.W. 43; Pilkington v. Potwin, 163 Iowa 86, 144 N.W. 39. All are early substituted service cases not exactly in point. In the recent case of Shields v. Heinold, 253 Iowa 898, 901, 114 N.W.2d 302, 303, cited by both parties, we said: "Where the real defendant is identifiable from the record before the court, or where it appears that the real defendant has actually been personally served, some variation in the name or error in an initial is not fatal." In Kriv v. Northwestern Securities Co., 237 Iowa 1189, 1199, 24 N.W. 2d 751, we pointed out that where reliance is placed on notice by publication which may never come to the attention of the party to be charged, the quality of the notice is measured with greater strictness than where the notice is personally served.

■ There is sound logic and reasoning in such a rule, for if the true defendant is so notified, and knows from observing the contents of the notice that he is the person referred to, there is no detriment to him caused by the misnomer. To hold a minor variation in defendant's Christian name when he was personally served and knows he is the party referred to is a fatal defect, would be to allow an ultratechnical defect, one that in no way misleads defendant or deprives him of a substantial right, which in turn would defeat the ends of justice and circumvent the purpose of our Rules of Civil Procedure, i.e., to obtain a speedy determination of litigation upon merits. Jacobson v. Leap, 249 Iowa 1036, 1041, 88 N.W.2d 919. While both rule 50, R. C. P., and sections 321.500 to 321.504 require the notice to be directed to the defendant, there seems to be no statutory requirement as to how he is to be designated. If it is obvious the party served is the one involved, how could he be injured or misled to his detriment?

In 42 Am. Jur., Process, section 97, page 84, it is stated: "Some courts hold that the service is good if the case can be brought within the idem sonans doctrine, and others test the sufficiency of the service by the substantial similarity of appearance of the true name of the defendant and the name as printed in the * * * notice", and in 38 Am. Jur., Name, section 36, page 613, it is stated: "There are many cases where it is held, notwithstanding the doctrine of idem sonans does not strictly apply, that the doctrine of interchangeability of names applies, * * *." In personal service cases we find merit in that conclusion.

In Jacobson v. Leap, supra, 249 Iowa 1036, 1040, 88 N.W.2d 919, 922, we discussed the requirements of rule 50 and held a failure to strictly or literally comply with its provisions was not necessarily fatal, and concluded that we have adopted a "rule of liberal construction to avoid defeating action because of technical and formal defects which could not reasonably have misled defendant." (Citing cases)

On the other hand, in Summerlott v. Goodyear Tire & Rubber Co., 253 Iowa 121, 111 N.W.2d 251, 93 A. L. R.2d 371, we called attention to rule 48, R. C. P., and cautioned that sub-

stantial defects in a notice would defeat plaintiff's cause of action. However, in neither of these two cases was the defect in naming defendant. They related to the place he was to appear, which would seem much more liable to confuse or mislead a defendant.

While it is often said the test as to idem sonans is when the attentive ear finds difficulty in distinguishing names when pronounced, we think each case must be considered in relation to the situation involved. Thus as Ed is recognized as an abbreviation of both Edwin and Edward, one might reasonably be expected to answer to either name. This is especially true when coupled with such circumstances as the finding of a party, addressed as Edwin Bahr, at the address of the real party, Edward Bahr.

In Ransom v. Sipple Truck Lines, supra, 240 Iowa 466, 470, 34 N.W.2d 590, we held that if it appears reasonably probable that notice will be communicated or delivered to the right party, slight deviations from the prescribed procedure, such as a variation of the Christian name of the defendant, will not void otherwise good service.

The case of Schaaf v. Brown, 304 Ky. 466, 200 S.W.2d 909, considers a service of process after a motor-vehicle accident in the State of Indiana and, after reviewing the purposes and requirements of such nonresident service of process, which were that it should be of such character as to make it reasonably probable that the defendant would receive actual notice, the court held that a notification addressed to James L. Brown and delivered to the home of James J. Brown, the proper party, was good notice to James J. Brown even though there delivery by certified registered mail was not required and it was left with defendant's wife who delivered it to him.

We ourselves have held a middle initial is not essential to identification of a person, and an error in this respect would not provide a fatal defect. Riley v. Litchfield, 168 Iowa 187, 150 N.W. 81, Ann. Cas. 1917B, 172.

There is authority which seems to hold a misnomer of the surname is of greater significance than in a Christian name. In Geneva v. Thompson, 200 Iowa 1173, 1174, 206 N.W. 132,

one Frank Genero was personally served rather than Frank Geneva. The action involved a contempt proceeding and the defect was held fatal. The court held the names do not look or sound the same, and under the circumstances the decision appears justified. On the other hand, in Lindsey v. Delano, 78 Iowa 350, 43 N.W. 218, there was a misnomer in the petition, the defendant being referred to as Edward while his true name was Edmund, and the court held that when he accepted service of the original notice designated as Edmund, judgment rendered thereunder was good. Also see Grannis v. Ordean, 234 U. S. 385, 34 S. Ct. 779, 783, 58 L .Ed. 1363.

■ Here admittedly the notification received by Edward was in fact mailed to Edwin at the address the right party had given as 205 Hebard Street, Knoxville, Illinois. Obviously the name was sufficiently similar to cause the postal authorities, under the direction to "Deliver only to addressee", to forward it to defendant's present place of abode, where he receipted for it in his correct name. We fail to see how this minor error in names under these circumstances could in anyway prejudice defendant's rights. We fail to see how this variation under such circumstances would lead to any confusion or endanger the positive requirements of good procedural rules as to commencement of actions. Defendant knew he was the one referred to in the attached original notice and petition. Being properly advised of where and when he should appear, he did so. He was the party that had been involved in the designated accident in Iowa, and, since by this method of notification he received what is the equivalent of personal service in this suit, we conclude the Iowa court had obtained jurisdiction prior to the expiration of the two-year period and that the variation in his Christian name was not such an irregularity as to defeat this personal injury action due to the statutory bar.

■ II. We come next to appellee's contention that notification was not sent to defendant's "last known residence or place of abode." The trial court found no merit in this contention, and neither do we. While there is room for some differences of opinion as to the meaning of such a phrase, as used in our statute it does not require plaintiff to conduct a dili-

gent search to find out whether defendant still resides at the address he gave the authorities at the time of the accident. In other words, we are satisfied plaintiff can rely on that address, at least until he be notified by defendant or his representative to the contrary.

True, some authorities under differently worded statutes do require that plaintiff show due diligence to learn defendant's last place of abode. Appellee cites us these cases: Hartley v. Vitiello, 113 Conn. 74, 154 A. 255; Schilling v. Odlebak, 177 Minn. 90, 224 N.W. 694; Drinkard v. Eastern Airlines, Mo. App., 290 S.W.2d 175; Hendershot v. Ferkel, 144 Ohio St. 112, 56 N.E.2d 205. We prefer the reasoning in the latest Wisconsin case of Sorenson v. Stowers, 251 Wis. 398, 402, 29 N.W.2d 512, 514, which held that parties who complied with their statute by filing with the commissioner and mailing notices of such service to the address given by the nonresident motorist to proper public authorities at the time of the accident were not required to ascertain any new address to which the motorist had subsequently moved and to mail notice to that address. The court therein said: "Plaintiffs had a right to rely upon the address given to the proper public authority at the time of the accident" and noted that even if inquiry had been made of the postal authorities at the place where he had resided, under postal regulations they would not have been permitted to furnish the plaintiffs with the new address of defendant. To require one involved in an accident with a nonresident to be watchful of the nonresident's changes in residence would practically annul the benefits intended by this legislation. Compliance with the clear procedural steps is difficult enough. If defendant must be actually located first, personal service on him would be much easier and quicker.

Perhaps that was what plaintiff had in mind here, for his lawyer testified he had called defendant at Knoxville, Illinois, about the time he filed the petition and was told Mr. Bahr had no telephone listed. An inquiry to a banker friend brought no information as to his present whereabouts, so plaintiff was forced to rely on the statutory procedure of mailing and did send the notification to defendant's last known address as given

by him to the authorities. Plaintiff rightfully anticipated, as the law intended, that through the forwarding process of the United States Post Office the letter would eventually reach the right party. Reach him it did and, as we see it, the intent and purpose of this manner of service was thereby accomplished. This is the only reasonable construction of that statute in light of the fact that we have placed upon the plaintiff the burden to show not only the proper mailing but the fact that the notification did actually reach the defendant and was either accepted or refused by him.

■ III. Appellee makes one other contention which we should consider here, although we find no merit therein. He urges us to hold the process defective because actual delivery of the notification by the United States mail was shown as November 29, 1956, which was over two years from the date of the accident. In other words, he contends the defense of the statute of limitations pleaded in his answer was good as a matter of law.

■ It is true, a judgment of a trial court will be affirmed on appeal if any basis for affirmance appears in the record, and the affirmance may be upon different grounds from those assigned by the trial court. In re Will of Smith, 245 Iowa 38, 60 N.W.2d 866; Stover v. Central Broadcasting Co., 247 Iowa 1325, 78 N.W.2d 1; Hot Spot Detector v. Rolfes Electronics Corp., 251 Iowa 647, 102 N.W.2d 354.

However, we have never construed the sections involved as placing any restriction on the date of delivery to defendant of a properly-addressed and timely-mailed notification. We did say in Emery Transportation Co. v. Baker, supra, that the notification required by section 321.501 is not served so as to confer jurisdiction over the nonresident unless it is actually delivered to or rejected by such defendant. We held plaintiff must show he met the requirement of mailing a proper and timely notification, and that in due course the letter reached defendant and he either accepted or rejected it in order to prove compliance with this statute.

■ The time of mailing notification, we held in Johnson v. Brooks, supra, 254 Iowa 278, 117 N.W.2d 457, was an ele-

ment of importance in fixing jurisdiction, although it seems quite clear that if each step is taken as required by these sections 321.500 to 321.505 inclusive, the date of actual jurisdiction is fixed as the date of filing with the commissioner and the mailing of notification. That is the import of our holding in the Esterdahl case. Here that date would be November 9, 1956.

We have exacted considerable strictness in compliance with procedural requirements under our nonresident statutes. It would seem extremely technical and most unfair to go further and require that plaintiff not only keep track of a frequent-moving defendant (and there are many these days), but be responsible for the prompt, speedy and accurate postal direction of his communication, and affirmatively show his timely-mailed notification also reached defendant prior to the date the action is barred. There is no such requirement in the statute and we are not willing to read it into this law. Although we cannot condone delays in starting actions until only hours remain to gain jurisdiction, we are satisfied one does gain jurisdiction when the notice is filed with the commissioner, provided he shows all other procedural requirements have been met.

What the situation might be if the time required for a duly-posted notice to reach a fast-moving defendant exceeded the sixty days provided for his appearance under section 321.500, we need not decide here.

IV. Appellant urges with vigor that the plea of the statute of limitations attempted by appellee's amendment to answer was not available to him. As she views it, the trial court, in overruling defendant's single special appearance and objections on February 26, 1957, considered any defects in the first petition, notice and notification, were remedied by the amendment to the petition, the new notice and the second notification, and that complete jurisdiction was acquired on November 8, 1956. Apparently any question as to timely filing and notification was not then raised or specifically considered by the court. That question arose for the first time on January 29, 1963, when appellee asked leave to amend his answer so as to

set up the bar of the statute of limitations on the personal injury claim.

Appellant contends after the court's determination of the objections to its jurisdiction defendant filed pleadings, admissions, a counterclaim, and stipulations, by which he acknowledged he was known as Edwin, Ed and Edward Bahr. Thus she claims the issue of misnomer, if it was properly raised as to the first notification, was abandoned and eliminated, and that by his actions thereafter he actually appeared generally. She also contends that by the delay of about seven years before raising this question defendant waived the defensive bar of the statute of limitations, and his application for leave to amend his answer to raise that issue should have been denied by the trial court.

We are not sure the trial court passed upon the sufficiency of the petition, notices and notification prior to the amendment of November 9, 1956, but from its ruling on the application for leave to amend filed March 8, 1963, it seems clear the court felt it did not. However, in its later ruling it found the first notice and notification were invalid and jurisdiction had not been then obtained. It held, in effect, that if it had not been for the amendments, new notices, filings, and notifications it would have sustained the special appearance. Appellant feels aggrieved by the court's consideration of this jurisdictional issue at this late hour and after the proceedings she claims amounted to a waiver and a general appearance. While due to our conclusions in Divisions I, II and III this contention need not be discussed, we hold the court did not abuse its discretion in allowing the amendment to defendant's answer.

▰▰▰ While considerable time elapsed before this amendment was offered, it does not appear the delay was all appellee's fault. Considerable liberality is allowed trial courts in permitting an amendment which pleads the statute of limitations. Conklin v. Towne, 204 Iowa 916, 216 N.W. 264; Emich Motors Corp. v. General Motors Corp., 7th Cir., 229 F.2d 714, 59 A. L. R.2d 159.

This court, of course, does not review the exercise of discretion by the trial court in permitting an amendment to plead-

ings, and will not reverse on that ground unless an abuse of discretion is shown. Best v. Yerkes, 247 Iowa 800, 77 N.W.2d 23, 60 A. L. R.2d 1354; Conklin v. Towne, supra. No such abuse appears here.

The trial court had full knowledge of the entire record and was better able to judge responsibility for delay than are we. To permit this amendment was proper, for it raised the issue as to whether the two years provided by the statute had elapsed prior to the time defendant was duly served with proper notice of the action's commencement. The actual trial had not commenced and this was a proper time to resolve that vital issue. Johnson v. Brooks, supra, 254 Iowa 278, 281, 117 N.W.2d 457. Figured from the second notification, the statute provided a bar. Figured from the first notification, it did not. At the request of both parties the court determined that its actual jurisdiction was acquired when the second notification was mailed to defendant and that the first notification was defective. From that determination we have this appeal and, although we disagree with the trial court as to the time when service was perfected on defendant, we must hold the court did not abuse its discretion in permitting the amendment to defendant's answer. Johnson v. Brooks, supra.

Having determined proper service of defendant had been obtained on the defendant Edward Donald Wayne Bahr on November 9, 1956, the matter must be remanded for further proceedings in the district court.—Reversed and remanded.

All JUSTICES concur.